FILED
2015 Jul-21  PM 04:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| NATASHA L. RUTLEDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:14-cv-1568-TMP |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

## I.     Introduction

The plaintiff, Natasha L. Rutledge, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").   Ms. Rutledge timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).   The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 626(c).   (Doc. 9).

Ms. Rutledge was 32 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education. (Tr. at 36, 148).  Her past work experiences include employment as a cashier, custodian, and hospital cleaner. (Tr. at 52-53).  Ms. Rutledge claims that she became disabled on November 1, 2010, due to degenerative disc disease with bulging and herniated discs, and arthritis.  (Tr. at 148).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends upon the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).   If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.*   If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.   20 C.F.R. §§ 404.1520(e), 416.920(e).   Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments.   20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.   *Id.*   If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.   *Id.*   Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he or she can do other work.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   If the

claimant can do other work, the claimant is not disabled. *Id.* The burden of demonstrating that other jobs exist which the claimant can perform is on the Commissioner; and, once that burden is met, the claimant must prove her inability to perform those jobs in order to be found to be disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Ms. Rutledge has not been under a disability within the meaning of the Social Security Act from the date of onset through the date of her decision. (Tr. at 19).  She determined that Ms. Rutledge has not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. at 13).  According to the ALJ, Plaintiff's degenerative disc disease of the lumbar spine, degenerative disc disease of the thoracic spine, cervicalgia and obesity are considered "severe" based on the requirements set forth in the regulations. (Tr. at 21).  She further determined that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 23).  The ALJ did not find Ms. Rutledge's allegations of debilitating pain to be entirely credible (Tr. at 24), and she determined that the plaintiff has the following residual functional capacity: to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that she may only

occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs; can never climb ladders, ropes or scaffolds; can engage in frequent reaching in all directions, including overhead; can engage in frequent fingering; must work in an environment that does not have stringent production or speed requirements and thus may not perform fast-paced assembly line work .   (Tr. at 23).

According to the ALJ, Ms.Rutledge is able to perform her past relevant work as a cashier as it is actually and generally performed.   (Tr. at 26).   The ALJ concluded her findings by stating that Plaintiff is "not disabled under sections 216(i) and 223(d) of the Social Security Act." (Tr. at 27).

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one.   The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.   *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).   The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.

*See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.   *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"   *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).   Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400.   No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).   Moreover, failure to apply the correct legal standards is grounds for reversal.   *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion

Ms. Rutledge alleges that the ALJ's decision should be reversed and remanded because, she asserts, the ALJ failed to properly base her residual functional capacity findings upon substantial evidence and, in reaching her conclusion, the ALJ misapplied the pain standard set forth by the Eleventh Circuit Court of Appeals.   (Doc. 10).   More specifically, Plaintiff contends that the ALJ's residual functional capacity findings are improper because they are not based on a medical source opinion ("MSO") and because the ALJ failed to employ a consultative examiner ("CE") or a medical expert ("ME").    (Doc. 8, pp. 9-13). Plaintiff further contends that the ALJ improperly failed to apply the Eleventh Circuit's three-part pain standard in addressing the effect of pain on Plaintiff's ability to function.   (Doc. 8, pp. 6-9).

A.   Residual Functioning Capacity

The ALJ determined that Ms. Rutledge could perform a limited range of light work.  (Tr. at 25-26).    The Plaintiff asserts that the ALJ gave "no weight" to the opinion of the State Agency medical consultant, Dr. Chastain.  (Tr. at 295-302). The Plaintiff further argues that the opinion was thus based on "no physical medical

opinion," and that Ms. Rutledge's case is due to be remanded for the ALJ to obtain "a properly assessed RFC from a treating or examining source."  (Doc. 8, p. 10).

The court must be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d).   Whether the Plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

It is odd that the plaintiff complains that the ALJ gave no weight to the assessment made by Dr. Chastain as it was even less favorable to her than the determination made by the ALJ.  Dr. Chastain opined that Ms. Rutledge's medical evidence of record does not support the degree of physical limitations that Ms. Rutledge has alleged.  (Tr. at 300 -02).  Dr. Chastain described Ms. Rutledge's MRIs as "normal for age with no clinically significant findings."  (Tr. at 300).  The

ALJ gave Dr. Chastain's functional capacity assessment little weight – not "no weight" as alleged by Plaintiff's counsel – based upon her determination that Ms. Rutledge's testimony about the extent of her pain was sufficient to warrant *additional* restrictions than those set forth by Dr. Chastain.   (Tr. at 26).

The ALJ determined that Plaintiff has a residual functioning capacity to perform light work with the exceptions and limitations set forth *supra*.   After considering the entire record, the ALJ determined that Plaintiff's medically determined impairments could reasonably be expected to cause the alleged symptoms, but explicitly found her statements regarding the intensity, persistence, and limiting effects of those symptoms lacked credibility.   (Tr. at 24).   The ALJ properly considered the evidence that Plaintiff complained of pain, but noted that the degenerative disc disease, as shown by a 2010 x-ray, a 2009 MRI, 2011 x-rays, and two 2011 MRIs failed to show the types of "abnormalities one would expect if the claimant were in fact disabled."   (Tr. at 24).   The ALJ further noted that the treatment prescribed was physical therapy (which Ms. Rutledge did not do) and muscle relaxers and pain medications.   Her most recent treatment notes showed that the Neurontin was easing her back pain, and that she was walking more.   (Tr. at 25).   The ALJ referred to treatment notes in which her treating physician consistently

noted that the objective tests did not show serious abnormalities, and that medications helped with the pain.   Based upon the medical evidence, including the evaluation by Dr. Chastain, and giving some credence to plaintiff's allegations regarding the persistence of her pain, the ALJ imposed some limitations on Plaintiff's capacity to work, adding limitations regarding speed.   (Tr. at 26).

The ALJ examined the evidence, along with Dr. Chastain's examination, and provided a detailed analysis and reasoning for the weight accorded to each. The ALJ did not find that Ms. Rutledge did not have the conditions she alleged or accompanying pain; the ALJ simply found that the conditions affecting her neck and back are not so debilitating as to render her unable to perform certain light work. The medical records show that the conditions did exist, but consistently rate the cervical and lumbar spine conditions as relatively mild, and consistently demonstrate that plaintiff was helped by medication.

The ALJ did not reach the RFC determination in the absence of any medical opinion evidence, as Plaintiff asserts.  The ALJ considered the medical opinion evidence, in conjunction with the medical records, and reached a decision that gave Plaintiff the benefit of the doubt in finding her less capable of work than the physical capacities evaluation prepare by Dr. Chastain.   Accordingly, the ALJ's RFC

determination is supported by substantial evidence.   The decision was both comprehensive and consistent with the applicable SSA rulings.

### B.    Ms. Rutledge's Allegations of Pain

Plaintiff also asserts that the ALJ's evaluation of her subjective complaints of pain was improper.   She argues that the ALJ failed to apply the three-part pain standard that has been set forth by the Eleventh Circuit Court of Appeals.   More specifically, she argues that the ALJ did not give enough credence to her subjective testimony about her ability to stand or sit, or her need to spend two to three hours per day lying down due to pain.   (Doc. 8, p. 8).

The appellate court has determined that subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence.   *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).   To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921

F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if she articulates explicit and adequate reasons for doing so, based on substantial evidence.   *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection" which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id*. (internal quotations omitted).

In this case, the ALJ found that Plaintiff met the first prong of the Eleventh Circuit Court of Appeals's pain standard, but she did not believe that the evidence confirms that the impairments are of such severity that they could reasonably be

expected to give rise to the disabling pain and other limitations alleged by Plaintiff. (Tr. at 24). The ALJ noted that the limitations described by Plaintiff were not substantiated by the treatment records. (*Id.*) The record supports the ALJ's skepticism regarding her credibility, based at least in part upon her repeated statements that medication helps with her pain and that the records show only minimal abnormalities of the spine.

The ALJ specifically addressed Plaintiff's allegations of pain in her opinion, and she provided explicit and reasonable reasons for rejecting Plaintiff's testimony regarding the severity of her pain.  The ALJ noted that while the Plaintiff testified that she could only sit or stand for 10 minutes without increased pain, she repeatedly told her treating physicians that the Neurontin helped or "effectively treated" her back pain (Tr. at 391, 392), and that Celebrex "helped" with the pain.  (Tr. at 389). The ALJ explained as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> In terms of the claimant's alleged musculoskeletal impairments, including degenerative disc disease of the lumbar and thoracic spine

and cervicalgia, the claimant's treatment records fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled.

Although objective imaging results reveal that the claimant has a back impairment, these results fail to confirm the claimant's allegation that this impairment is completely debilitating. A December 2010 x-ray of the claimant's cervical spine revealed no acute findings (Ex 4F at 21). A 2009 magnetic resonance imaging scan of the claimant's lumbar spine revealed degenerative disc disease at L4-5 and L5-S 1 with no evidence of canal stenosis and minimal disc herniation. A magnetic resonance imaging of the claimant's thoracic spine revealed some degenerative changes with no evidence of disc herniation. April 2011x-rays of the claimant's lumbar and thoracic spine revealed degenerative disc disease (Ex. 5F at 7-8). July 2011imaging results of the claimant's bilateral shoulders revealed no arthritis and no significant AC joint degenerative changes. A cervical spine series revealed loss of cervical lordosis (Ex. 8F at 1). An August 2011 magnetic resonance imaging of the claimant's cervical spine revealed C3-4 and C5-6 disc protrusions (Ex. lOF at 19).

Physical examinations and treatment notes also undermine the claimant's allegations as to the debilitating nature of her physical impairments. The claimant had treated her arthralgias with her primary care physician, an orthopedist and a rheumatologist. On April 4, 2011, the claimant presented to her primary care physician with low back pain and bilateral leg pain. Her physician prescribed flexeril and referred her to an orthopedist (Ex. 9F at 6). The claimant presented to orthopedist Lloyd Johnson, MD later that month alleging 3 years of back pain radiating down her legs, as well as hip pain. She stated that her pain was getting progressively worse (Ex. 5F at 2). After reviewing imaging results, Dr. Johnson opined that the claimant had degenerative disc disease of the thoracic and lumbar spine and that her hip pain was spinal in etiology (Ex. 5F at 8). At an April 19, 2011 physical examination, Dr. Johnson found tenderness in the thoracic and lumbar region but no focal motor deficits in the lower extremities. The

claimant had back pain only with a bilateral straight leg raise test. Dr. Johnson prescribed physical therapy and pain management (Ex. 5F at 7).

(Tr. at 24).  The ALJ carefully detailed the chronological history of the various MRIs, x-rays, and other objective medical tests that failed to substantiate medical conditions severe enough to cause the debilitating pain plaintiff claimed.

The objective medical and other evidence supports the ALJ's conclusion that Plaintiff's conditions did not cause disabling limitations and instead shows that she could perform a reduced range of light work.   Not only did the ALJ articulate reasons for rejecting the plaintiff's claim of debilitating pain, that rejection is supported by substantial evidence in the record.

## IV.    Conclusion

Upon review of the administrative record, and considering all of Ms. Rutledge's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and is in accord with the applicable law; accordingly, the decision is due to be AFFIRMED.   A separate judgment will be entered.

DONE this 21st day of July, 2015.


_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE